UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE PROVIENCE, individually;

    Plaintiff,

-v-

No.
Hon.

CITY OF DETROIT, a Municipal corporation;
COUNTY OF WAYNE, a Municipal corporation;
DAVID MOORE, in his individual capacity;

    Defendants.

---

**JULES B. OLSMAN (P28958)**
**WOLFGANG MUELLER (P43728)**
**DONNA M. MacKENZIE (P62979)**
Olsman, Mueller, Wallace & MacKenzie, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com
jbolsman@olsmanlaw.com
dmackenzie@olsmanlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, DWAYNE PROVIENCE, individually, by and through his attorneys, OLSMAN, MUELLER, WALLACE & MacKENZIE, P.C., by JULES B. OLSMAN and WOLFGANG MUELLER, and does hereby complain against the Defendants in this civil action, stating unto this Court as follows:

1.    This is an action for damages brought pursuant to 42 USC §§1983 and 1998, the Fourth, Sixth and Fourteenth Amendments to the United States Constitution and under the statutory and common law of the State of Michigan against Defendant, DAVID MOORE, in his

individual capacity; and the CITY OF DETROIT and COUNTY OF WAYNE. Jurisdiction is founded upon 28 USC §1331 and 28 USC §1343 and upon the pendent jurisdiction of this Court to adjudicate claims arising under Michigan law.

2. Venue is proper based on the situs of the incident, which occurred in the City of Detroit.

3. That at all pertinent times Plaintiff, DWAYNE PROVIENCE, was a resident of the City of Detroit, State of Michigan.

4. That the Defendant, DAVID MOORE, is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a police officer for the City of Detroit Police Department, a department of the CITY OF DETROIT, a Municipal corporation.

5. That at the time of the events alleged in this Complaint, the Defendant, DAVID MOORE, was at all times acting in his individual capacity and within the scope of his employment as a police officer employed by the Detroit Police Department and under color of law.

6. That at all times relevant hereto, the Defendant, CITY OF DETROIT, a Municipal corporation, was the employer of Defendant, DAVID MOORE.

7. That at all times relevant hereto, the Defendant, COUNTY OF WAYNE, a Municipal corporation, was the employer of Assistant Prosecuting Attorneys, Lamar Moreland, Vincent Toussaint, and Eric Restuccia, who at all times were acting under color of law and within the scope of their employment.

## GENERAL ALLEGATIONS

8. On March 24, 2000, at approximately 6:30 p.m., Rene Hunter, a known drug

dealer, was murdered at the intersection of Greenfield Road and Pembroke Street in the City of Detroit.  Numerous witnesses at the scene saw Mr. Hunter speaking to two black males who were sitting in an older model gray 4-door Chevrolet Caprice Classic.  The passenger in the gray Caprice Classic, while still sitting in the vehicle, pulled out a hand gun and fired several shots at Mr. Hunter, fatally wounding him.  The gray Caprice, which had been facing west on Pembroke, turned right ("north") on Greenfield Avenue and then made a left turn down a nearby side street.  Witnesses from the neighborhood also told the police that immediately before the shooting, Mr. Hunter had been taken from his close friend, Courtney Irving's, house on Rutherford Street, just south of Pembroke, and placed in a white Cadillac.  The white Cadillac drove away from Rutherford Street, turned right on Pembroke and headed toward Greenfield.  The white Cadillac was followed by a grey 4-door Caprice Classic occupied by Antrimone "Terry" Mosley and two other men.

9. The numerous eyewitnesses to the Hunter shooting, including at least one off-duty Oakland County Sheriff's Department deputy, were consistent in their description of the shooters' vehicle and the direction the vehicle headed following the shooting.

10. On or about April 24, 2000, Courtney Irving (nickname "Wease") was found murdered at the intersection of Fenmore and Pembroke in Detroit.  Several witnesses indicated a white Cadillac and gray-colored vehicle were seen firing shots into the windshield of the vehicle in which Mr. Irving was sitting.  Irving was then pulled out of the vehicle and placed into the Cadillac where he was conveyed to Pembroke and Fenmore.  His body was dumped in the street at Fenmore and Pembroke where he was again shot by a black male with two other black males standing in the street.  Two vehicles later returned and told witnesses to move away from Irving

and not to call the police.  The passenger of one of the vehicles then got out and fired one more shot into the body of Mr. Irving and before driving off.

11.     Defendant, DAVID MOORE, a sergeant with the Detroit Police Department, was the officer-in-charge ("OIC") of the Hunter murder investigation, while Sgt. Gregory Thomas was the OIC on the Irving murder investigation.

12.     Based upon information from all the eye witnesses, as well as lengthy discussions with police officers familiar with the neighborhood and individuals involved, a "Progress Note" was written by Sgt. DAVID MOORE before May 15, 2000, detailing the Hunter and Irving murders and the motive behind the murders.  The Progress Note stated, in pertinent part:

> *These to (sic) Homicide files are joined at the hip, because the two complainants were together when Rene got killed and Courtney was going to tell who and why they killed Rene.  Bangy has gotten a lwayer (sic) and wants to talk to us now (attorney Blank 313-275-1551).  He is going to come in on Monday at 11:00 a.m., 5/15/00.  Maurice Sutherland, aka Bangy has the info we need to close these cases.  Mr. Sutherland is the key.  He is the set up person on Rene Hunter's case.*
> (Progress Note, **Exhibit 1**)

13.     All of the individuals named in the Progress Note and in witness statements obtained immediately following the Hunter and Irving murders were well known to Detroit police officers as dealers of large amounts of marijuana in the 7 Mile/Greenfield Rd. area.  The information obtained by the police clearly pointed to Sorrell "Reddy" Mosley and his nephew, Antrimone "Terry" Mosley, as the persons responsible for the Hunter murder, as Reddy Mosley blamed Hunter for the theft of a large amount of marijuana from trucks used to transport the drugs in connection with Mosley's drug trade.  The Mosleys lived next door to Courtney Irving.

14.     Maurice Sutherland (a/k/a "Bangy"), the man mentioned in the Progress Note as

being the "key" to solving the Hunter and Irving murders, was murdered during the late spring of 2000, shortly after meeting with Sgt. MOORE on May 15, 2000.

15.     Not a single witness or document following the Hunter and Irving murders ever mentioned Plaintiff, Dwayne Provience, or his brother, De-Al Provience.

16.     On June 22, 2000, Larry J. Wiley, a known crack cocaine addict with a felony criminal record going back to the 1970s, was arrested and questioned regarding a series of break-ins of numerous Jiffy Lube stores.  Mr. Wiley claimed he knew nothing about the Jiffy Lube break-ins but allegedly volunteered that he was a witness to the Rene Hunter murder.

17.     Mr. Wiley provided a written statement claiming that he was riding his bicycle in the area.  He claimed that Plaintiff, Dwayne Provience, and his brother, De-Al Provience, were driving in a "beige or yellow (Buick) Regal" and that he had seen the victim jump out of the beige or yellow Buick Regal and saw Dwayne Provience shoot the victim in the head.  Wiley further claimed that Dwayne Provience killed Rene Hunter over "some money, drug money" and that "everybody" in the neighborhood "knew" that Provience and Hunter had a "beef" over the drug money.

18.     Defendant, MOORE, the OIC in charge of the Hunter murder case, reviewed Mr. Wiley's statement.  MOORE knew that the information provided by Wiley about Rene Hunter's actions, the shooter's vehicle, the direction it was headed, and the motive for the killing was completely contradicted by every eyewitness to the murder and every neighborhood informant spoken to by police officers.  Wiley's story was also contradicted by the Progress Note MOORE wrote shortly before May 15, 2000 and by information provided to MOORE by beat cops familiar with the Mosleys and their drug trade.

19.     Defendant, MOORE, also knew that the "Progress Note" memo, written in early May, 2000, was apparent exculpatory evidence.

20.     On June 22, 2000, immediately following the statement by the known drug addict, Larry Wiley, De-Al Provience, was arrested.

21.     On June 25, 2000, Plaintiff, Dwayne Provience, was arrested and subsequently charged with the murder of Rene Hunter. De-Al Provience was also charged with the Hunter murder.

22.     Vincent Toussaint was the Assistant Prosecuting Attorney handling the Preliminary Examination in the criminal case against Plaintiff.

23.     Lamar Moreland was the Assistant Prosecuting Attorney for Wayne County at the trial in the criminal case against Plaintiff.

24.     Defendant, DAVID MOORE, was in the court throughout the criminal trial of Dwayne Provience, which resulted in a verdict of guilty on the charge of second degree murder and felony firearm use following a jury trial on February 5, 2001. De-Al Provience, who elected to have a bench trial instead of a jury, was found not guilty by the judge, Hon. Timothy Kenny. Plaintiff was sentenced to serve 32-62 years in the Michigan prison system.

25.     Larry Wiley was the only witness at trial who identified Dwayne Provience and his brother, De-Al, as being involved in the Hunter murder.

26.     Defendant, DAVID MOORE, chose not to tell the defense lawyers that Larry Wiley had been offered a deal to testify against Dwayne and De-Al Provience; namely, that he would not be prosecuted for the burglaries for which he had been jailed.

27.     Despite the Progress Note having been authored before May 15, 2000, the

document listed in Exhibit 1 was not provided to Mr. Provience's defense counsel at any time during the criminal action or during Mr. Provience's appeals of his conviction.

28. In 2002, a known drug dealer, Eric Woods, was arrested for the murder of Courtney Irving. He was tried before a jury, with defendant, MOORE, watching the trial. Eric Restuccia, the Assistant Prosecuting Attorney in the case against Eric Woods, stated that Mr. Irving was murdered by Woods, who was the hired "hit man" for Antrimone "Terry" Mosley and Sorrell "Reddy" Mosley, because Irving was going to give information to the police about Rene Hunter's murder. It was the prosecution's position that Irving knew that the Mosleys were involved in Hunter's murder and was about to give that information to the police. "As a result of having that knowledge, the Mosleys told (Woods) that if he killed Irving, then his life would be spared. According to the prosecution, consequently, the Mosleys orchestrated Irving's murder." *Woods v McKee*, No. 06-cv-13741, 2009 WL 804148 at *1 (E.D. Mich., Mar. 24, 2009).

29. On August 18, 2002, Eric Woods gave a written confession to ATF Agent, Michael Yott, who was working with Detroit Police Dept. on operation "2nd Shot", to solve "cold cases." Woods' confession detailed how Woods killed Courtney Irving at the request of Terry Mosley because Irving was going to tell the police of the Mosley's involvement in having Rene Hunter murdered.

30. The Woods confession was not turned over to defense counsel for Dwayne Provience, despite it being apparent and material exculpatory evidence, and despite Provience's case still being on appeal.

31. The Progress Note referenced in Exhibit 1 was provided to the Defendant, Woods, in his murder trial. The Progress Note was never provided to counsel for Dwayne Provience.

32. In 2006, Larry Wiley provided an affidavit in which he recanted his prior statements claiming he was at the scene of the shooting and witnessed Dwayne Provience shoot Rene Hunter.

33. In 2009, Plaintiff's conviction was reviewed by lawyers for the Michigan Innocence Clinic, who agreed to represent him. Their discovery of the above-referenced Progress Note and the recantation by Larry Wiley of his prior testimony, led to the filing of Motions for Relief from Judgment and a New Trial.

34. On October 31, 2009, current Wayne County Prosecutor, Kim Worthy, was quoted in the Detroit Free Press, after learning of the Progress Note that had not been turned over to Dwayne Provience's defense counsel. Ms. Worthy stated *"That this evidence does entitle the defendant to a new trial."*

35. On November 3, 2009, Judge Timothy Kenny granted Dwayne Provience's motion and vacated his criminal conviction. Judge Kenny also ordered a new trial.

36. On March 24, 2010, the Wayne County Prosecutor's Office dismissed all charges against Plaintiff.

37. That due to the conduct of DAVID MOORE, the CITY OF DETROIT and COUNTY OF WAYNE, as set forth below, DWAYNE PROVIENCE, has suffered the following injuries and damages:

    A. Being wrongfully incarcerated and imprisoned for a period of over nine years;

    B. Severe emotional distress for the period from his arrest to the present, including, but not limited to: the emotional distress of being charged with first degree murder and facing a possible sentence of life in prison without the possibility of parole; being wrongfully convicted; facing re-trial on

    charges of first degree murder for a crime the police knew he did not commit;

  C. Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

  D. Fright, shock, indignity, humiliation and embarrassment of being wrongfully charged and imprisoned for murder;

  E. Loss of enjoyment of daily activities including, but not limited to, seeing his children grow up;

  F. Loss of employment opportunity;

  G. Payment of significant attorney fees;

  H. Many of Plaintiff's injuries and damages are likely to be permanent;

  I. Other damages which may be revealed through discovery.

## COUNT I

### CONSTITUTIONAL VIOLATIONS BY ALL DEFENDANTS

38. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

39. Defendant, MOORE, was under an absolute legal duty to disclose to the prosecutors all exculpatory and impeachment evidence where its value was apparent, including, but not limited to, the May 15, 2000, Progress Note.  MOORE's failure to disclose the Progress Note to the prosecutors resulted in material exculpatory evidence not being turned over to Dwayne Provience's defense counsel, in violation of the State's *Brady* obligations.

40. Defendants violated DWAYNE PROVIENCE's constitutionally-protected rights, including his right to liberty protected by the Due Process clause of the Fourteenth Amendment

to the U. S. Constitution, as well as his right to be free from unlawful detention without probable cause, guaranteed by the Fourth Amendment, and his right to a fair trial, guaranteed by the Sixth Amendment, by the following conduct :

    A.    Deliberately and consciously failing to disclose material exculpatory and impeachment evidence in their files to Plaintiff's criminal defense counsel, pursuant to *Brady v Maryland*, 373 US 83 (1963), which would have resulted in a finding of lack of probable cause at the preliminary exam or an acquittal at trial including, but not limited to, the above-referenced Progress Note, and the fact that the police and prosecutors would not charge Larry Wiley for breaking and entering Jiffy Lube stores in exchange for his testimony implicating Plaintiff and Plaintiff's brother, De-al Provience in the Hunter murder;

    B.    Defendant, MOORE, deliberately and consciously failed to disclose exculpatory evidence in his files to the prosecutors, before the Preliminary Exam and trial, which was apparent exculpatory evidence, pursuant to *Brady, supra.*, and would have resulted in a finding of lack of probable cause at the preliminary exam or an acquittal at trial;

    C.    Defendant, MOORE, deliberately and knowingly supplied false information and omitted information which showed a reckless disregard for the truth in requesting an arrest warrant which was material to a finding of probable cause;

    D.    Defendant, CITY OF DETROIT, created policies, practices and customs, including a failure to provide adequate training to its police officers, including Defendant, MOORE, regarding the police department's constitutional obligation to turn over apparent exculpatory and impeachment evidence to the prosecutors, which demonstrated "deliberate indifference" to the constitutional rights of its citizens, and was the moving force behind Defendant, MOORE's violations of Plaintiff's constitutional rights;

    F.    Defendant, COUNTY OF WAYNE, created policies, practices and customs, including a failure to provide adequate training to its prosecutors, regarding the government's constitutional *"Brady"* obligation to turn over material exculpatory evidence to the criminal defendant and his counsel, which demonstrated "deliberate indifference" to the constitutional rights of its citizens, and was the moving force behind individual prosecutors' violations of Plaintiff's constitutional rights.

      G.      Defendant, COUNTY OF WAYNE, refused to dismiss murder charges against Plaintiff, from the time of the Order for a New Trial through March 24, 2010, despite knowledge of Larry Wiley's recantation of his prior testimony, and his recantation of his recantation, such that there was no probable cause to believe that Plaintiff had committed the criminal act in question, i.e., the facts and circumstances were not sufficient to warrant a prudent person, or one of reasonable caution, in believing that Plaintiff had committed the crime in question, and there was an absence of sufficient admissible evidence to support a conviction.  COUNTY OF WAYNE's actions, through its chief-policymaker for the Office of Prosecutor, Kym Worthy, violated Plaintiff's constitutional rights to Due Process and to be free from illegal seizure and displayed deliberate indifference to Plaintiff's constitutional rights.

      H.      COUNTY OF WAYNE's decision to illegally continue prosecution and detention of Plaintiff from November 3, 2009, through March 24, 2010, despite lack of probable cause, was made by Prosecutor Kym Worthy, the individual with final policy-making authority for the Office of Prosecutor, and represented official government policy regarding the prosecution of Plaintiff.

      I.      Other acts of constitutional violations that will be discovered through the process of discovery.

41.    The constitutional rights which were violated by Defendants, as set forth above, were clearly established before June 25, 2000.

42.    That as a direct and proximate result of the Defendants' willful violation of DWAYNE PROVIENCE's constitutionally protected rights, Plaintiff was detained without probable cause, charged with two crimes he did not commit, and wrongfully convicted and imprisoned, causing him to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiff, DWAYNE PROVIENCE, prays for such compensatory damages as are available pursuant to federal law. Plaintiff further seeks punitive damages pursuant to 42 USC §1983 as to the individual Defendant, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

## COUNT II

### MALICIOUS PROSECUTION BY DEFENDANT DAVID MOORE

43. Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

44. Defendant, MOORE, initiated criminal prosecution against Plaintiff in state court.

45. The criminal proceedings ultimately terminated in his favor with a dismissal of the charges in state court.

46. MOORE initiated the prosecution by deliberately stating false and misleading facts in his Request for Warrant, which were relied upon by the Wayne County Prosecutor's Office. MOORE showed reckless disregard for the truth; namely that the police knew the Hunter murder was related to the theft of drugs belonging to a well-known drug gang in the area, and had nothing to do with Plaintiff. Defendant, MOORE, knew that disclosing the information contained in the Progress Note to the prosecutor would result in a finding of lack of probable cause to arrest.

47. The prosecution was undertaken without probable cause, as well as with malice and to charge someone with the unsolved murder, not with the intention of bringing Plaintiff to justice for having committed the alleged murder, especially as Detroit police officers familiar with the neighborhood and the Mosley drug gang's operations, had informed Defendant, MOORE, that Plaintiff was not connected to the Hunter murder and that Hunter was killed by the Mosleys for having stolen a load of marijuana from in front of their house.

48. As a direct and proximate result of Defendant's malicious prosecution, Plaintiff was charged and convicted for two crimes he did not commit, causing him to suffer the injuries

and damages set forth above.

      WHEREFORE, Plaintiff, DWAYNE PROVIENCE, prays for such compensatory and exemplary damages as are available pursuant to the common-law of the State of Michigan, as well as treble damages pursuant to MCL 600.2907, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

**COUNT III**

**GROSS NEGLIGENCE OF DEFENDANT DAVID MOORE**

      49.    Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

      50.    Defendant, MOORE, was at all times, under a duty to act reasonably to avoid causing injury with respect to Dwayne Provience's constitutional rights in his criminal case.

      51.    Defendant's conduct, by deliberately concealing and failing to disclose the above-described Progress Note, and other apparent exculpatory and impeachment evidence, breached that duty and demonstrated "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

      52.    Defendant's conduct constitutes gross negligence as defined in MCL §691.1407(7)(a) and is an exception to the defense of governmental immunity.

      53.    Defendant's conduct was the proximate cause of Plaintiff's injuries and damages set forth above.

      WHEREFORE, Plaintiff, DWAYNE PROVIENCE, prays for such damages as are available pursuant to the common-law of the State of Michigan, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

        OLSMAN, MUELLER, WALLACE
        & MacKENZIE, P.C.

        s/Wolfgang Mueller
        Jules B. Olsman (P28958)
        jbolsman@olsmanlaw.com
        Wolfgang Mueller (P43728)
        wmueller@olsmanlaw.com
        Donna MacKenzie (P62979)
        dmackenzie@olsmanlaw.com
        Attorneys for Plaintiff
        2684 West Eleven Mile Road
        Berkley, MI 48072
        (248) 591-2300

Dated: April 28, 2010

**JURY DEMAND**

Plaintiff, DWAYNE PROVIENCE, by and through his attorneys, OLSMAN, MUELLER, WALLACE & MacKENZIE, P.C., by JULES B. OLSMAN and WOLFGANG MUELLER, demands a jury trial in the instant matter.

        OLSMAN, MUELLER, WALLACE
        & MacKENZIE, P.C.

        s/Wolfgang Mueller
        Jules B. Olsman (P28958)
        jbolsman@olsmanlaw.com
        Wolfgang Mueller (P43728)
        wmueller@olsmanlaw.com
        Donna MacKenzie (P62979)
        dmackenzie@olsmanlaw.com
        Attorneys for Plaintiff
        2684 West Eleven Mile Road
        Berkley, MI 48072
        (248) 591-2300

Dated:   April 28, 2010