UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE PROVIENCE,

               Plaintiff,                        Case No. 10-11719
                                                Hon. Denise Page Hood
v.                                          Magistrate Judge Laurie J. Michelson

CITY OF DETROIT, a Municipal corporation;
DAVID MOORE, in his individual capacity;

               Defendants.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES AND ENTER DEFAULT FOR DISCOVERY ABUSE (DKT. 49)

Plaintiff brought this lawsuit alleging violations of 42 U.S.C. § 1983 – and several state law claims – as a result of his wrongful conviction and subsequent incarceration for second-degree murder.

On April 29, 2011, after Defendants failed to produce certain homicide files and related information, Plaintiff filed a Motion to Strike Defendant City of Detroit and David Moore's Answer and Affirmative Defenses and Enter Default For Discovery Abuse (Dkt. 49) which was referred to this Court for a hearing and determination pursuant to 28 U.S.C. §636(b)(1). (Dkt. 52.) Defendants filed a Response on May 16, 2011, which opposed the entry of a default judgment but stated, "[w]here it can be shown that relevant evidence has been lost by a civil defendant an appropriate remedy may be an adverse instruction inasmuch as a default on liability for failure to provide all requested discovery has been held too harsh a remedy." (Dkt. 55, ¶ 13.) Plaintiff filed a Reply on May 18, 2011 in which he indicated that if the Court was not prepared to enter a default judgment, an adverse inference jury instruction would be an appropriate remedy. (Dkt. 56 at ECF p. 2.)

The Court heard oral argument on Thursday, May 26, 2011.  For the reasons set forth on the record at that hearing, the Court indicated that, pursuant to the factors set forth in *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150 (6th Cir. 1988), it was not prepared to issue a recommendation to the District Court that the severe penalty of a default judgment be entered against the Defendants.  (Dkt. 62, 5/27/11 Order.)  The Court further indicated, however, that it would consider the less severe sanction of an adverse inference jury instruction pertaining to the missing discovery – the Courtney Irving and Maurice Sutherland homicide files and the Investigation Binder involving the "Street Lordz" group – but that the record was not sufficiently developed to enable the Court to determine the appropriateness of this discovery sanction.  (*Id.*)  Accordingly, the Court requested supplemental briefing on the following:  "a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." (*Id.* (quoting *Forest Labs, Inc. v. Caraco Pharmaceutical Labs, Ltd*., No. 06-CV-13143, 2009 U.S. Dist. LEXIS 31555 (E.D. Mich. April 14, 2009)).

The parties submitted their supplemental briefs on June 30, 2011.  Unfortunately, the Defendants' brief focused solely on why a default judgment was an inappropriate remedy and did not address the three spoliation factors.  The Court, however, heard additional oral argument on August 2, 2011 during which the parties addressed these factors.  The parties recently advised the Court that, despite significant efforts since the oral argument, they have been unable to settle the case and thus, this matter is ready for ruling.

2

For the following reasons, the Court **RECOMMENDS** that Plaintiff's request for a default judgment as a discovery sanction be denied, but that, if the missing homicide files of Courtney Irving and Maurice Sutherland are not located before the trial, the jury be instructed that it may infer these files would contain information helpful to the Plaintiff's case.[1]

## I.    BACKGROUND

### A.    Plaintiff's Criminal Conviction and Subsequent Dismissal of the Charges

Plaintiff has provided the following facts pertaining to the second-degree murder conviction for which the charges were ultimately dropped after he served approximately nine years in prison:

---

[1] There appears to be a split in authority on whether a magistrate judge should provide a report and recommendation to a district judge on a Fed. R. Civ. P. 37 motion for sanctions where, as here, the relief sought is dispositive (e.g., default judgment). *See Bell-Flowers v. Progressive Ins. Co.*, No. 04-3026, 2005 WL 3434818, at *1, 2 n.1 (W.D. Tenn. Dec. 13, 2005) (Pham, M.J.) ("The majority of courts to consider the issue have concluded that when a party brings a motion for discovery sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the moving party, governs the magistrate judge's authority over the motion." (citing cases)).

Because several judges in this district have viewed a report and recommendation proper in this scenario, and because this Court sees no need to depart from this practice, this Court will make a recommendation to the District Court regarding the pending motion. *Flagg v. City of Detroit*, No. 05-74253, 2011 WL 4634249, at *1 (E.D. Mich. Aug. 3, 2011) (Whalen, M.J.) ("Before the Court is Plaintiffs' Request for Entry of Default and Other Sanctions Based Upon Spoliation of Evidence. Because the request for default is a dispositive motion, I will proceed by Report and Recommendation . . . ." (internal citation omitted)); *Laethem Equipment Co. v. Deere & Co.*, No. 05-10113, 2009 WL 3064663, at *1, n.1 (E.D. Mich. Sept. 21, 2009) (Komives, M.J.) ("Although [the defendant's] motion is entitled a motion for sanctions and is filed pursuant to Fed. Rules Civ. P. 26 and 37, its request for relief [seeks dismissal]. Therefore, I address this motion as a dispositive one pursuant to 28 U.S.C. § 636(b)(1)(B)" (internal citation omitted)); *Burket v. Hyman Lippitt, P.C.*, No. 05-72110, 2007 WL 891891, at *1 (E.D. Mich. Mar. 21, 2007) (Majzoub, M.J.) ("Because the motion seeks an involuntary dismissal [as a discovery sanction], the Court will recommend a disposition to the district court."); *Citizens Ins. Co. of Am. v. Moyer*, No. 04-CV-73909, 2006 WL 3289771, at *1 (E.D. Mich. Nov. 13, 2006) (Friedman, J.) ("If defendants wish to seek dismissal of the complaint as a sanction for discovery abuses, or for any other reason, they must file a motion clearly indicating as much in the caption and in that event the court would either hear the motion itself or refer it to the magistrate judge for report and recommendation, rather than for hearing and determination.").

Rene Hunter ("Hunter"), a drug dealer in Detroit, was murdered on March 24, 2000. (Dkt. 49, Pl's Mot. Default J. Ex. 1.) Apparently, a rival drug gang run by the Mosleys – Sorrell "Reddy" Mosley and his nephew, Antrimone "Terry" Mosley – blamed Hunter for the theft of a large amount of marijuana from trucks used to transport the drugs in connection with the Mosley's drug trade. The Mosleys lived next door to Hunter's close friend, Courtney Irving ("Irving"). On the night of the murder, Hunter was taken from Irving's home. (Dkt. 1, Compl, ¶8.) Irving decided he was going to go to the police and tell them what he knew about the Mosley's involvement in the Hunter murder. On April 24, 2000, Irving was murdered. (Pl.'s Mot. Default J., Exs. 1 and 2) The Detroit Police Department ("DPD") investigated both murders. On May 15, 2000, the following Progress Note was prepared indicating that these two murders (Hunter and Irving) were connected:

> These to (sic) Homicide files [Hunter and Irving] are joined at the hip, because the two complainants were together when Rene [Hunter] got killed and Courtney [Irving] was going to tell who and why they killed Rene. Bangy [Maurice Sutherland] has gotten a lawyer and wants to talk to us now (attorney Blank 313-275-1551). He is going to come in on Monday at 11:00 a.m., 5/15/00. Maurice Sutherland, aka Bangy, has the info we need to close these cases. Mr. Sutherland is the key. He is the set up person on Rene Hunter's case.

*Id.*

As mentioned in the Progress Note, Mr. Sutherland, as well as his lawyer, Daniel Blank, did meet with Defendant Sgt. David Moore ("Moore") and Homicide Detective, Miguel Bruce, on May 15, 2000, but refused to talk. DPD believed that Sutherland was the "setup" man – the person that set up Hunter and Irving to be killed. (*Id.*, Ex. 2.) Detective Bruce warned him that he should talk to the police about the two (Hunter and Irving) murders because he "was a dead man" regardless of whether he talked, now that the Mosleys knew he was coming in to meet with the police. (*Id.*)

4

As predicted by Detective Bruce, Mr. Sutherland was murdered within two weeks of the meeting with Sgt. Moore. (Dkt. 49, Pl's Mot. Default J. at 2.)

Approximately one month later, in June 2000, the Detroit Police arrested Larry Wiley, a drug-addict with a prior criminal record, for a number of burglaries. (*Id.* at Ex. 3.) Wiley told the police that he witnessed the Hunter murder and that Plaintiff Dwayne Provience was the shooter because of a drug turf battle between Hunter and Provience. (*Id.*) Plaintiff and his brother were subsequently arrested. The above-referenced Progress Note, however, was never turned over to Plaintiff. He was tried in Wayne County Circuit Court and convicted by a jury of second degree murder in February 2001, while his brother was acquitted following a bench trial. (*Id.*; Dkt. 1, Compl., ¶ 24) The prosecution's theory at Plaintiff's murder trial, based on the testimony of Wiley, was that Hunter posed a threat to Plaintiff's drug territory and therefore Plaintiff killed Hunter. (Pl.'s Mot. Default J., Ex. 3.) Plaintiff was not advised that Wiley was given a deal on the burglary charges in exchange for his testimony.

In 2002, a friend of the Mosleys, Eric Woods, confessed to killing Courtney Irving at the request of Terry Mosley because Irving was going to tell the police of the Mosley's involvement in having Hunter murdered. This confession was not given to Plaintiff's criminal counsel. The prosecution's theory at Woods' trial was

> Woods and his friends . . . Terry Mosley and . . . Reddy Mosley were friends of Courtney Irving . . . According to the prosecution, the Mosley brothers were involved in a murder, on or about March 24 2000, of an individual named Rene Hunter . . . It was the prosecution's position that Irving knew that the Mosleys were involved in Hunter's murder and was about to give that information to the police.

*Woods v. McKee*, 2009 WL 804148 at 1 (E.D. Mich. 2009) ("As a result of having that knowledge,

5

the Mosleys told (Woods) that if he killed Irving, then his life would be spared. According to the prosecution, consequently, the Mosleys orchestrated Irving's murder."). Woods was convicted of the Irving murder in 2003. (Dkt. 49, Pl's Mot. Default J. Ex. 3.) Plaintiff exhausted the appeals of his criminal conviction for the Hunter murder in 2006.

In 2009, the University of Michigan Innocence Clinic ("Innocence Clinic") began reviewing Plaintiff's case. In connection with this project, one of the students interviewed Eric Woods who indicated his mother had a file pertaining to his case. Upon review of that file, the Innocence Clinic discovered the May 2000 Progress Note that indicated the Hunter and Irving Murders were connected. (Dkt. 49, Pl's Mot. Default J. at 1, n.1.) Additionally, Larry Wiley recanted his prior statements claiming he was at the scene of the shooting and witnessed Plaintiff shoot Rene Hunter. (*Id.* at 1.) As a result, the Innocence Clinic filed motions for relief from judgment and a new trial on Plaintiff's behalf. In a news report on the case, Wayne County Prosecutor Kim Worthy was quoted as stating the Progress Note "does entitle the defense to a new trial." (*Id.* at Ex. 3.) On March 24, 2010, the Wayne County Prosecutor's Office dismissed the murder charges against Plaintiff. (*Id.* at 2.)

Shortly thereafter, on April 28, 2010, Plaintiff filed this §1983 lawsuit against Sgt. David Moore, the Officer-In-Charge of Plaintiff's murder case, for alleged *Brady* violations, and the City of Detroit for its alleged policies and failure to train officers in their *Brady* obligations – as well as state claims, including malicious prosecution and intentional infliction of emotional distress. (Dkt. 1.) More specifically, Plaintiff alleges the following against the Defendants: that Sgt. Moore did not tell defense lawyers that Wiley had been offered a deal to testify against Plaintiff – i.e., he would not be prosecuted for the burglaries for which he had been jailed; the Progress Note was never turned

6

over to Plaintiff's counsel; and Sgt. Moore did not tell prosecutors that Hunter was killed because he was blamed for the theft of marijuana from Reddy Mosley. (*Id.* at ¶¶ 26, 27, 31, 39-42.) Instead, he watched the Wayne County Prosecutor argue that Plaintiff killed Rene Hunter because they had a "beef" over Hunter selling drugs in Provience's territory.

As part of the discovery in this civil rights case, Detective Bruce, one of the Squad 8 investigators working the Hunter and Irving murder cases, testified that the investigators in Squad 8, including Sgt. Moore, agreed that Irving was killed because he was going to "snitch" to the police about Reddy Mosley's involvement in the Hunter murder, and that Sutherland was murdered because he went to the police to tell them about the Irving murder. (Dkt. 49, Pl's Mot. Default J. Ex. 2.) He described the three murders as being "joined at the hip." (*Id.*)

In sum, the essence of Plaintiff's claims is that Defendant Moore was aware that Plaintiff was not involved with the Hunter murder yet allowed him to be prosecuted anyway and that Defendants' *Brady* violations resulted in his wrongful conviction.

### B.   Defendants' Failure to Produce Certain Discovery

After Defendants failed to timely produce their Rule 26(a) Initial Disclosures as well as responses to Plaintiff's first set of document requests, Plaintiff filed a motion to compel. (Dkt. 12.) This was resolved through a September 20, 2010 Stipulated Order in which Defendants agreed to produce responses by September 24, 2010. (Dkt. 15.) More specifically, based on the parties' stipulation, Magistrate Judge Virginia Morgan ordered as follows:

> IT IS HEREBY ORDERED that Defendants, CITY OF DETROIT and DAVID MOORE, shall provide full and complete Rule 26(A) Initial Disclosures including, but not limited to, the homicide and narcotics files relating to the murders of Rene Hunter (00-104); Courtney Irving (00-147); and Maurice Sutherland (00-196), on or before September 24, 2010.

7

> IT IS FURTHER ORDERED that Defendant, CITY OF DETROIT, shall provide full and complete responses to Plaintiff's First Request for Production of Documents to Defendant, City of Detroit on or before September 24, 2010.

*Id.*

Defendants did not comply with the Order.  Thus, on October 1, 2010, Plaintiff's counsel sent the following email to Defendants' counsel:

> This is a courtesy correspondence regarding your discovery responses and initial disclosures which were due last Friday. I do not want to have to file another motion. Please note that the responses should include the complete homicide files for the murders of Rene Hunter (00-104); Courtney Irving (00-147) and Maurice Sutherland (00-196) including, but not limited to, ALL Progress Notes and Case Track notes and memos.
>
> Thank you. If I don't hear from you today, please consider this my request for your concurrence in my motion to compel the responses.

(Dkt. 23, Mot. Compel, Ex. 2.)  On October 6, 2010, Defendants' counsel responded, "thanks for your patience.  I can get you what still exists before this Friday [October 8, 2010]." (*Id.*)  When no documents were produced, Plaintiff filed a second motion to compel on October 14, 2010. (Dkt. 23.) Plaintiff's motion specifically referenced his need for the "Homicide files relating to the murders of Rene Hunter, Courtney Irving, and Maurice Sutherland." (*Id.* at ECF 8.)

On October 25, 2010, Defendants produced the Rene Hunter Homicide file. (Dkt. 49, Pl's Mot. Default J. Ex. 5.**)**  On November 10, 2010, the parties stipulated to the entry of the following Order to resolve the motion to compel:

> IT IS HEREBY ORDERED that Defendants, CITY OF DETROIT and DAVID MOORE, shall provide responses to Plaintiff's discovery requests which are the subject of this Court's September 20, 2010, Order on or before November 19, 2010.

8

> IT IS FURTHER ORDERED that failure to comply with this Order shall result in significant sanctions, up to, and including the entry of defaults against Defendants, David Moore and the City of Detroit.

(Dkt. 26.)

Despite Defendants' stipulations to produce, they did not provide the following: the homicide files for the Courtney Irving and Maurice Sutherland murders and a "black binder" related to the "Street Lordz" rap group/drug traffickers – a group that had a connection to the Mosley's drug gang. DPD Officer Ashford, a beat cop familiar with the players in and neighborhood where Hunter and the Mosleys lived, testified that this binder contains a witness statement from Oscar Green who provided information about Sorrel Mosley and his connection to the Rene Hunter and Courtney Irving killings. (Dkt. 49, Pl's Mot. Default J. at 7 and Ex. 6.) Thus, Plaintiff filed the current Motion to Strike Defendants' Answer and Affirmative Defenses and Enter Default For Discovery Abuse. (Dkt. 49.) In response, counsel for Defendants indicated that much of the delay in providing the requested discovery was due to his serious health issues. (Dkt. 55, Def.'s Supp. Resp., ¶ 8.) As for the remaining unproduced documents, he further advised, for the first time, that:

> 10. Unfortunately the 2 missing Homicide files (Irving and Sutherland) which Plaintiff alleges were related to the murder for which the Plaintiff was charged have been missing since the Plaintiff's criminal trial almost a decade ago.

> 11. The Wayne County/Prosecutor has not been able to locate its files on the Irving and Sutherland murders (which would include a copy of the DPD homicide files).

(*Id.*, ¶¶ 10-11.)

After considering the relevant factors – and especially because the Defendants have not been subjected to any lesser discovery sanctions for their failure to produce documents they have twice

stipulated to produce [2] – this Court previously ruled that it did not believe a default judgment was warranted and thus, would not recommend that ultimate sanction to the District Court. (Dkt. 62); *see also Flagg v. City of Detroit*, No. 05-74253, 2011 WL 4634249, at *12 (E.D. Mich. Aug. 3, 2011) (finding that "a default judgment is the Court's most drastic discovery sanction. A fair application of the four *Harmon* factors . . . persuades me that while the [defendant's] conduct in this case – and particularly the conduct of its attorneys – is deeply troubling, entry of a default judgment is not warranted. To borrow a concept from criminal sentencing law, a sanction should be "sufficient, but not greater than necessary" to accomplish its purpose."); *Mulbah v. Detroit Board of Educ.*, 261 F.3d 586, 594 (6th Cir. 2001) ("the sanction of dismissal is appropriate only if . . . *no alternative sanction* would protect the integrity of the pretrial process" (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)); *Arch Ins. Co. v. Broan-Nutone, LLC,* No. 09-319, 2011 U.S. Dist. LEXIS 99043, *12 (E.D. Ky., Aug. 31, 2011) ("Here, where the evidence was not purposely or knowingly destroyed by the plaintiffs, the extreme sanction of summary judgment is inappropriate."). The Court does find, however, that Plaintiff is entitled to the lesser sanction of an adverse inference jury instruction that the jury may find the missing homicide files would have contained information helpful to Plaintiff's murder case – i.e., further support that the Hunter, Irving and Sutherland murders were all connected and involved the Mosleys.

---

[2] Additionally, while the Plaintiff has suffered prejudice, the Court does not believe this factor compels the extreme sanction of a default judgment. As discussed below, the likely evidence from the missing files – that the Hunter, Irving and Sutherland murders were connected and involved the Mosleys – is available from other sources. Police officer witnesses will testify to this belief and Plaintiff has the Progress Note that further supports it.

## II.     ANALYSIS

### A.     Legal Framework

Pursuant to Fed. R. Civ. P. 37, a court is authorized to impose sanctions when a party fails to cooperate in discovery and/or obey a discovery order.  *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008) ("A district judge holds a variety of sanctions in his arsenal, the most severe of which is the power to issue a default judgment.").  A court can also exercise its inherent powers to enter sanctions against a party due to spoliation of evidence.  *Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009); *see also Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99, 107 (2d Cir. 2002) (holding that where "the nature of the alleged breach of a discovery obligation is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction.").  While Plaintiff's Motion initially requested a default judgment, he also contends that an adverse inference jury instruction is a warranted sanction for the Defendants' failure to produce files they now claim are lost or missing.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.,* 2009 WL 998402, at *1 (E.D. Mich. Apr. 14, 2009) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)).  Spoliation sanctions are now governed by federal law.  *Adkins v. Wolever*, 554 F.3d 650, 652-53 (6th Cir. 2009).  In a recent case involving the City of Detroit's failure to preserve and produce requested discovery, Magistrate Judge Steven Whalen summarized the relevant spoliation law:

> "[I]t is within a district court's inherent power to exercise broad discretion in imposing sanctions based on spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009). . . .

11

> The party "seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense." *Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002), quoted in *Forest Laboratories, Inc. v. Caraco Pharmaceutical Laboratories, Ltd.*, 2009 WL 998402 (E.D. Mich. 2009).

*Flagg,* 2011 WL 4634249, at *11. *See also Beaven v. United States Department of Justice,* 622 F.3d 540, 553 (6th Cir. 2010) (enunciating the following as standards to govern the district court's discretion: "an adverse inference for evidence spoilation is appropriate if the Defendants knew the evidence was relevant to some issue at trial and their culpable conduct resulted in its loss or destruction. This depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction."). The standard for the imposition of an adverse inference instruction is essentially the same whether the party controlling the evidence destroyed it or simply failed to produce it. *Residential Funding, supra.*

A sanction in this case is appropriate, because Defendants had an affirmative duty to preserve the homicide files at the time they were lost, they negligently allowed the files to be lost, and the files likely contained information relevant to Plaintiff's claims.

## B.     Spoliation Factors

### 1.     Duty to Preserve

Plaintiff must first show that Defendants "had an obligation to preserve [the allegedly spoliated evidence] at the time it was destroyed" because "[i]t goes without saying that a party can only be sanctioned for destroying evidence if it had a duty to preserve it." *Forest Laboratories,* 2009 U.S. Dist. LEXIS 31555 at *5. Defendants do not dispute this factor. Independent of any possible

12

litigation obligation to preserve relevant evidence, the City has acknowledged a policy of preserving all homicide files.  During oral argument, the City's counsel explained that it is the policy of the Detroit Police Department to permanently maintains such files – they are not destroyed.  Deputy Chief Tolbert confirmed this during his deposition.  (Dkt. 68, Pl's. Supplemental. Br. Ex. 1.)

It is less clear whether Defendant was obligated to preserve the files as a result of this litigation.  "An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation." *Beaven*, 622 F.3d at 553-54.  Here, however, the parties are unable to pin-point precisely when the homicide files became missing.  (Dkt. 68, Pl's. Suppl. Br. at 3.)  At the hearing, counsel for Defendants acknowledged that he cannot think of anything else the Plaintiff could do, other than what has already been done, to find out what happened to the files.  Counsel for the City states that the Irving and Sutherland homicide files have been missing for more than ten years.  (Dkt. 55, Def.'s Supp. Resp., ¶ 10.)  At the hearing he also indicated that a police investigator requested the files in 2003 but was told they could not be found.  However, in a March 10, 2010 proceeding in state circuit court involving Plaintiff's effort to obtain a new trial, Officer Ashford testified that he saw – and had – the Irving and Sutherland investigation files at some point in 2005 and 2006.  (Dkt. 49, Pl. Mot. Default J., Ex. 6.)  Moreover, in September and November 2010, the City stipulated to produce the Irving and Sutherland files.  As to these files, the Court will find the duty to preserve element satisfied based on the City's acknowledgment that it is obligated to maintain homicide files as a matter of internal policy.

The parties further acknowledge, however, that the "Street Lordz" binder that was used by DPD in the Mosley narcotics investigation is not a homicide file that the Defendants were obligated to preserve.  Officer William Ashford testified that the binder contained, "[a] complete profile of the

13

Street Lordz, their members, their pictures, their arrests, what raids that I may have typed search warrants for, interview notes and interview interrogation notes." (Dkt. 49, Pl's Mot. Default J. Ex. 7.)  Officer Ashford  testified that he gave the binder to a narcotics officer named Carmen Diaz in either 2006 or 2007.  (*Id.*)  Ms. Diaz then gave the binder to an Assistant Wayne County Prosecutor – but it has not been produced by the County.  This all appears to have occurred around the time that Plaintiff's appeals for his murder conviction expired and before the involvement of the Innocence Clinic.  (Dkt. 49, Pl.'s Mot. Default J. at 6.)  Plaintiff has not provided any evidence to suggest the DPD should have reasonably foreseen this section 1983 litigation at that time, nor has he provided any other evidence that the Defendants had a duty to preserve the binder.[3]

  2.  *Culpable State of Mind*

   After a court has determined that a party was obliged to preserve relevant materials and documents, it must then consider whether that party acted with sufficient culpability to warrant the imposition of sanctions.  The level of intent typically impacts the severity of the sanction that is warranted.  "Each case will turn on its own facts and the varieties of efforts and failures is infinite."  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec, LLC,* 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010).

   In *Flagg, supra,* the court recognized that there is conflicting authority in this Circuit as to whether bad faith or intentional misconduct is required – as opposed to mere negligence – before sanctioning a spoliator with an adverse inference instruction.  For instance, the court referenced the

---

[3] For the same reasons, there is nothing in the record to suggest that the binder was lost with any culpable state of mind on the part of DPD and thus, this Court does not recommend an adverse inference instruction with respect to the Street Lordz binder.  Moreover, to the extent the Oscar Green interview memo should have been in the Courtney Irving file, that will be covered by the adverse inference instruction on the missing homicide files.

*Forest Laboratories* case, which held that "[t]he sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence." But in *In re Global Technovations, Inc.*, 431 B.R. 739, 782 (Bkrtcy. E.D. Mich. 2010), the Bankruptcy Court rejected the reasoning of *Forest Laboratories*, instead relying on an unpublished district court case, *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.,* 2009 WL 2169174, at *3 (S.D.Ohio 2009), and an unpublished Sixth Circuit case, *Chrysler Realty Co., LLC, v. Design Forum Architects, Inc.,* 341 Fed.Appx. 93, 95 (6th Cir. 2009), to hold that an adverse inference instruction is inappropriate unless the spoliator acted in bad faith. *See also Avery v. Crawford*, No. 10-10447, 2011 U.S. Dist. LEXIS 112376 (E.D. Mich. Sept. 30, 2011) (also relying on the *Chrysler Realty* case).

The *Flagg* court found the *Forest Laboratories'* decision more consistent with the flexible approach taken by the Sixth Circuit in *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009):

> "As our sister circuits have recognized, a proper spoliation sanction should serve both fairness and punitive functions. *See Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir.1995) (observing that a proper sanction will serve the 'purpose[s] of leveling the evidentiary playing field and ... sanctioning the improper conduct'). Because failures to produce relevant evidence fall 'along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality,' *Welsh,* 844 F.2d at 1246, the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault. Thus, a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence. *Vodusek,* 71 F.3d at 156."

*Id.* at 652-53. The *Adkins* Court also cited with approval *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995), which held that, "As a general proposition, the trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the

15

loss of evidence, or the destruction of evidence. While a finding of bad faith suffices to permit such an inference, it is not always necessary."

As the Sixth Circuit has upheld the severe sanctions of dismissal and default judgment for willful and bad-faith conduct during discovery, e.g., *Smith v. Nationwide Mut. Fire Ins. Co.*, 410 F. App'x 891 (6th Cir. 2010); *Bryant v. U.S. Postal Serv.*, 166 F. App'x 207 (6th Cir. 2006); *U.S. v. Reyes*, 307 F.3d 451 (6th Cir. 2002), it seems reasonable to allow a lower level of culpability to support the lesser sanction of an adverse inference instruction. Indeed, in *Beavan*, the Sixth Circuit found that the "'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly, even without intent to breach a duty to preserve it, *or negligently*." 622 F.3d at 554 (quoting *Residential Funding Corp.*, 306 F.3d at 108) (emphasis added));[4] *see also Alexander v. Del Monte Corp.,* Case No. 09-12303, 2011 U.S. Dist. LEXIS 9915 ( E.D. Mich. Jan. 11, 2011) ("The culpable state of mind factor is satisfied where evidence was destroyed negligently, even without intent to breach a duty to preserve it."); *Broan-Nutone,* 2011 U.S. Dist. LEXIS 99043 at *13 ("Bad faith is not an essential element of spoliation . . . and the court has discretion to craft a spoliation sanction that serves both fairness and punitive functions.").[5]

---

[4] The *Residential Funding* court reiterated the following rationale:

"[The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss."

306 F.3d at 108 (citation omitted).

[5] It should be noted that another court in this Circuit has found that "although other courts of appeal have held that ordinary negligence can satisfy spoliation requirements, this Court is

There is nothing in the record to suggest that the requested homicide files were intentionally or deliberately lost (or destroyed). But they are not where they are supposed to be and repeated searches have not uncovered them. While counsel for the Defendants argued at the hearing that the files could have been lost by storage facility personnel or the Wayne County Prosecutor's Office, the retention of the files remained, at all times, the responsibility of the City. Moreover, it is reasonable to assume that Defendants expected to locate these files as evidenced by their direct and indirect affirmations of the existence of these records during the litigation. More specifically, Defendants stipulated to produce the homicide files on September 20, 2010. After failing to do so, defense counsel indicated in an October 6, 2010 email that he would produce what still existed. Subsequently, on November 10, 2010, Defendants again stipulated to produce the homicide files.

It may be that when counsel first stipulated to the production of the files on September 20, 2010, he did so based merely on an expectation the files would exist. That same reasoning is harder to condone, however, over six weeks later when Defendants again stipulated to produce the homicide files and further stipulated that "sanctions shall be awarded" for their failure to do so. (Dkt. 26.)

---

unwilling to extend this notion to situations, such as presented here, where the duty to preserve comes from a regulation and not reasonably foreseeable litigation. Furthermore, even assuming negligence satisfies the bare minimum requirements for the elements of spoliation, the Court has discretion in the area of sanctions to consider the circumstances of the case. Under the circumstances of this case, the Court finds that sanctioning Defendants, without greater proof of misconduct, would be inequitable." *O'Brien v. Ed Donnelly Enters.,* No. 04- 0085, 2010 U.S. Dist. LEXIS 42271, * 24 (S.D. Ohio, Apr. 29, 2010). This case had been remanded by the Sixth Circuit which directed, "if the district court concludes that spoliation did take place, the district court can consider, under its inherent authority, whether it was negligence or bad faith that motivated the defendants and relatedly, what sanction, if any, should be imposed." *O'Brien v. Ed Donnelly Enters.,* 575 F.3d 567, 588 (6th Cir. 2009). This is further support that, in the appropriate circumstance, the Sixth Circuit would permit an adverse inference instruction based on negligence. The Court finds that under the facts of this case, the equities do warrant the lesser sanction of an adverse inference instruction.

None of the Defendants' prior discovery responses indicated that the files were lost or missing.  And, as Plaintiff's counsel explained at the hearing, the Rene Hunter file was found by Defendant Moore on the eve of a sanction hearing before the Wayne County Circuit – in the exact place he expected to find it.  Under these circumstances, the Court finds credible Plaintiff's belief that the homicide files were available at the time he requested them.  The Defendants' failure to locate and/or properly maintain the Irving and Sutherland files is at least negligent.  *See Forest Laboratories,* 2009 WL 998402 at *5 ("'[o]nce the duty to preserve attaches, any destruction of [evidence] is, at a minimum, negligent'") (quoting *Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)); *see also Arteria Property Pty v. Universal Funding V.T.O., Inc.,* No. 05-4896, 2008 U.S. Dist. LEXIS 77199 (D.N.J. Oct. 1, 2008) ("This Court need not delve into these murky waters [of the requisite culpability of a purported spoliator needed to trigger an adverse inference], as either under a negligence or bad faith/intentional destruction standard, an adverse inference is warranted here. The Defendants  admitted in their Rule 26 disclosures to have in their possession the [requested] letter, yet when pressed about the issue in his  deposition, [defendant's representative] stated that he did not know anything about the letter. This tends to show that Defendants either had the document  and then willfully destroyed it, or had the document and lost it, which would constitute bad faith or negligence, respectively.   What was once under the control of the Defendants is now gone."); *Creative Resources Group of New Jersey, Inc. v. Bart*, 212 F.R.D. 94, 107 (E.D.N.Y. 2002) ("Even if that intent were absent, however, the circumstances here rise to the level of negligence that satisfies the [culpability] standard. [Defendant] claims that many of the documents are "missing," but that he has no idea of how they were lost or discarded. At the very least, the circumstances amount to negligence in the preservation of evidence.  The 'culpable state of mind' element is thus

satisfied."); *Liberman v. FedEx Ground Package System, Inc.*, No. 09-2423, 2011 U.S. Dist. LEXIS 4401, *12 (E.D.N.Y. Jan. 18, 2011) ("Given that . . . FedEx had an obligation to preserve the relevant records, FedEx was at least negligent in its failure to do so."); *Pension Comm.* 685 F. Supp. 2d at 464 (S.D.N.Y. 2010) (Explaining that in the discovery context, negligence is a "failure to conform to th[e] standard" of "what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding.").

### 3. Relevance

"When evidence is destroyed [or rendered unavailable] in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions." *Forest Laboratories*, 2009 U.S. Dist. LEXIS 31555 at * 19 (quoting *Zubulake*, 220 F.R.D. at 220). Thus, "the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." *Residential Funding*, 306 F.3d at 109.

Plaintiff makes the following relevance argument:

> Given the deaths of Courtney Irving and Rene Hunter, which were *"joined at the hip"* according to the Progress Note, and the murder of Maurice Sutherland within two weeks of meeting with police, as predicted by Homicide Det. Miguel Bruce, three murders were *"joined at the hip."* According to Homicide Detective Bruce, everyone in Squad 8, including Sgt. David Moore, knew that the murders were hits ordered by Sorrel "Reddy" Mosley. The potential for exculpatory and impeachment *Brady* evidence as to Dwayne Provience is obvious.

(Dkt. 68, Pl.'s Suppl. Br. at 4.) The Court agrees that the extrinsic evidence – e.g., the Progress Note uncovered by the Innocence Project, the prosecutor's theory at Eric Woods' trial (that Courtney

Irving was killed for "snitching" on the Mosleys), the deposition of Detective Miguel Bruce and other officers[6] – supports that the DPD believed the murders of Rene Hunter, Courtney Irving and Maurice Sutherland were related to each other and involved the Mosleys. As these related murders began to pile up, it is a fair inference that the investigation files would contain information regarding this connection and potential suspects – i.e., would reference involvement by the Mosleys or exclude any mention of Plaintiff. And while Plaintiff has not pointed to anything that conclusively establishes the missing files identified the Mosleys as carrying out the killings, the court in *Residential Funding* cautioned that:

> "Courts must take care not to 'hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence,' because doing so 'would subvert the...purposes of the adverse inference, and would allow parties who have...destroyed evidence to profit from that destruction.'" (Internal citations omitted).

*Id.* at 109.

In sum, Magistrate Judge Virginia Morgan found the Irving and Sutherland homicide files to be relevant in the discovery context when she ordered their production, and this Court finds them to be relevant in the spoliation context as well. In other words, the Court finds that a reasonable fact finder could infer that the unavailable evidence would have been of the nature alleged by the party affected by its destruction – exculpatory of the Plaintiff.[7]

---

[6]   Gerald Thomas was the officer-in-charge of the Courtney Irving murder. Plaintiff's counsel advised at the hearing that Mr. Thomas testified that he recalled seeing the Progress Note in the Irving homicide file.

[7]   As for the binder on the Street Lordz, Officer Ashford testified that Oscar Green's interrogation form would have been put in there. (Dkt. 49, Pl's Mot. Default J. Ex. 6.) Green was interviewed in 2002 when Eric Woods was arrested. He also allegedly implicated the Mosleys in the Hunter homicide and thus, the binder would have contained relevant evidence. As discussed above, however, Plaintiff has not established that Defendants had a duty of preservation or acted with a culpable state of mind in the loss of the binder.

### III.   CONCLUSION AND RECOMMENDATION

Having considered the relevant factors, the Court finds that "the 'middle ground' sanction of an adverse inference instruction is appropriate; such an approach does not condone the negligent spoliation of evidence, yet does not impose an unduly harsh penalty on a merely negligent party. *See Welsh v. United States,* 844 F.2d 1239, 1249 (6th Cir. 1988). Such an instruction should level the evidentiary playing field here." *Del Monte Corp.,* 2011 U.S. Dist. LEXIS 9915 at * 5; *see also Broan-Nutone, LLC,* 2011 U.S. Dist. LEXIS 99043 at * 13-15 ("The instruction described above [that the jury may infer that further testing would have disproved plaintiffs' causation theories but that they are not required to do so] properly compensates for the prejudicial effect of the spoliation of the evidence to [defendant] while not excessively punishing [plaintiffs] for their negligent but not purposeful conduct.").

Accordingly, the Court recommends that, if the Irving and Sutherland homicide files are not located and produced prior to trial, the jury be instructed that it is permitted, but not required, to infer that the contents of the homicide files would have been favorable to the Plaintiff.

### IV.   FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal

quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case

Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies,

through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon

this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an

objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

/s Laurie J. Michelson
_____

LAURIE J. MICHELSON

Dated: November 28, 2011                 UNITED STATES MAGISTRATE JUDGE

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on  November 28, 2011,*
*by electronic and/or first class U.S. mail.*

*s/Barbara M. Radke*
*Judicial Assistant*
