UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DWAYNE PROVIENCE,**

    **Plaintiff,**

                                               Case No. 10-11719
v.                                            Honorable Denise Page Hood

**CITY OF DETROIT and DAVID MOORE,**

    **Defendants.**[1]
_____/

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**
**BRIEFING SCHEDULE AND SETTING HEARING AND CONFERENCE DATE**

**I.    BACKGROUND**

This matter is before the Court on Defendants' Motion for Summary Judgment. A response was filed and a hearing held on the matter. For the reasons set forth below, the Court denies the Motion for Summary Judgment.

Plaintiff Dwayne Provience ("Provience") was convicted of second-degree murder, serving approximately nine years in prison before the charges were dismissed by the Wayne County Prosecutor's Office on May 24, 2010. On April 28, 2010, Provience filed a 42 U.S.C. § 1983 action against Defendants City of Detroit ("City of Detroit") and David Moore ("Moore") alleging: Constitutional Violations under the Due Process Clause of the Fourteenth Amendment (Count I); Malicious Prosecution by Defendant Moore (Count II); and Gross Negligence by Defendant Moore

---

[1] Defendant Wayne County was dismissed pursuant to a stipulation by the parties on May 19, 2011. (Doc. No. 57)

- 1 -

(Count III).

Rene Hunter ("Hunter") was murdered on March 24, 2000, allegedly by a rival drug gang for the theft of a large amount of marijuana. Hunter was taken from a friend's home, Courtney Irving. Irving lived next door to the rival drug gang run by the Mosleys–Sorrell "Reddy" Mosley and his nephew, Antrimone "Terry" Mosley. Irving was going to go to the police to tell them that the Mosleys were involved in the Hunter murder. Irving was murdered on April 24, 2000.

Moore, a sergeant and the Officer-In-Charge of the investigation at the Detroit Police Department ("DPD"), and other detectives, investigated both murders. In a May 15, 2000 Progress Note on the investigation of both murders, it was noted that the Hunter and Irving murders were connected and that Maurice Sutherland ("Sutherland") had information on both murders. Sutherland, with his lawyer, met with the DPD on May 15, 2000. The DPD believed Sutherland was the "setup" man for both murders. Sutherland apparently did not give up any information on the two murders. Two weeks later, Sutherland was murdered.

In June 2000, the DPD arrested Larry Wiley ("Wiley"), a drug addict with a prior criminal record, for several burglaries. Wiley told the DPD that he witnessed the Hunter murder and that Provience was the shooter. Provience and his brother were arrested for the murder. Provience's brother was acquitted following a bench trial, but Provience was convicted by a jury of second degree murder in February 2001. The prosecution's theory at Provience's murder trial was that Provience murdered Hunter because Hunter posed a threat to Provience's drug territory. Wiley testified for the prosecution at Provience's trial. Provience was not advised that Wiley was given a deal on the burglary charges in exchange for his testimony. The May 15, 2000 Progress Note regarding the Hunter and Irving murder investigation noted above was not turned over to Provience

during the discovery period in his prosecution.

In 2002, Eric Woods, a friend of the Mosleys, confessed to the murder of Irving. Woods informed the DPD that Terry Mosley directed him to kill Irving because Irving was going to tell the police that the Mosley's were involved in the Hunter murder, for which Provience had been convicted. Woods' confession was never disclosed to Provience's counsel.

Provience exhausted his appeals on the Hunter murder in 2006. The University of Michigan Innocence Clinic began reviewing Provience's case in 2009. Woods was interviewed by one of the students. Woods indicated to the student that his mother had a file regarding Woods' case. The Innocence Clinic reviewed Woods' file and discovered the May 2000 Progress Note connecting the Hunter and Irving murders. Wiley thereafter recanted his statement that he witnessed Provience shooting Hunter. The Innocence Clinic then filed motions for relief from judgment and a new trial on Provience's behalf. On March 24, 2010, the Wayne County Prosecutor's Office dismissed the murder charge against Provience for the killing of Hunter. This suit ensued.

## II.   ANALYSIS

### A.   Summary Judgment Standard

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the

nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

Rule 56(c)(1) provides that parties must support their factual assertions by citing to particular parts of the record. Fed. R. Civ. P. 56(c)(1). Although the court may consider other materials in the record, the court need only consider the cited materials. Fed. R. Civ. P. 56(c)(3). If facts are unavailable to the nonmovant, that party must show by affidavit or declaration that it cannot present such facts for specific reasons. Fed. R. Civ. P. 56(d).

### B.     Municipal Liability

Defendants claim that the City of Detroit is entitled to summary judgment since there are insufficient factual allegations to support a claim that a policy or custom by the City of Detroit or its failure to train its employees caused a constitutional violation injuring Provience. In response, Provience claims that it has presented sufficient evidence to survive summary judgment on his failure to train allegations against the City of Detroit regarding the DPD officers' obligations to provide exculpatory materials to criminal defendants.

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). The following requirements must be met: (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987). As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim. *Graham v. Connor,* 490 U.S. 386, 393-94 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).

In order for a municipality to be liable under Section 1983 there must be some evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Generally, the doctrine of *respondeat superior* has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or customs. *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell,* 436 U.S. at 690.

The Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of*

*Cincinnati,* 475 U.S. 469, 480 (1986). A "'official policy' is one adopted by someone with 'final authority to establish municipal policy *with respect to the action ordered.*'" *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 515 (6th Cir.1991) (quoting *Pembaur,* 475 U.S. at 481) (emphasis added). In other words, "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Id.* A municipal employee is not a "final policymaker" unless his decisions "are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir. 1993).

Provience's against the City of Detroit is that the DPD has a policy and custom of failing to properly train its officers regarding constitutional obligation to turn over exculpatory and impeachment evidence to the prosecutors. (Comp., ¶ 40.D.) Under *Brady v. Maryland,* 373 U.S. 83 (1963), the Supreme Court requires disclosure of exculpatory information in the prosecution's possession to the accused and suppression of such evidence violates the accused's due process rights where the evidence is material either to guilt or to punishment. *Brady,* 373 U.S. at 87. This duty squarely falls on the prosecutor, not the police. *Giglio v. United States,* 450 U.S. 150, 154 (1972). However, the due process guarantees recognized in *Brady* also impose an analogous or derivative obligation on the police. *Moldawan v. City of Warren,* 578 F.3d 351, 381 (6th Cir. 2009).

The City of Detroit does not provide any evidence as to the type of training its officers receive regarding *Brady* materials but merely argues that no training is necessary. Provience submitted evidence supporting his allegation that the DPD does not provide any training as to *Brady* materials. Det. Miguel Bruce who was involved in the investigation of the Hunter and Irving murders, testified that the prosecutor's office receives basic information that the homicide section

determines the prosecutor should receive. (Bruce Dep., p. 22) Moore testified that he received no formal training on a police officer's obligations under *Brady*. (Moore Dep., p. 49) The City of Detroit has not provided any documents in response to Provience's request for production of training materials regarding a police officer's obligations under *Brady*.

Viewing the light most favorable to Provience, the Court finds that the City of Detroit has not supported its argument that it is not liable under a failure to train theory as to the *Brady* materials. Provience has submitted sufficient to show that the City of Detroit does not provide any training on a police officer's obligations under *Brady*. Summary judgment is denied on the failure to train claim against the City of Detroit.

    **C.    Section 1983 Claims**

        **1.    Qualified Immunity**

Moore argues he is entitled to qualified immunity on the constitutional claims against him based on the *Brady* violation, false arrest and malicious prosecution claims. Provience responds there are genuine issues of material facts to preclude summary judgment.

Government officials are entitled to *qualified* immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A government official will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the action at issue was lawful]; but if an officer of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are

avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

     The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court. *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993).

     Moore does not raise any arguments as to whether or not the constitution guarantees a right to be free from false arrest or malicious prosecution. It is assumed that Moore agrees these two claims are clearly established. Moore, however, argues there exists no clearly established right as

to the *Brady* claim. The Sixth Circuit held in the *Moldawan* case, that the right was clearly established as it pertained to the defendant in that case. The defendant in the *Moldawan* case was convicted in 1991. *Id.* at 365. Provience was convicted in 2001. Provience has met the clearly established constitutional right prong that the due process guarantees recognized in *Brady* imposed a derivative obligation on the police during Provience's prosecution of the murder in 1991.

### 2. *Brady* Violation

Provience submitted evidence to create a genuine issue of material fact as to whether Moore violated Provience's rights under *Brady*. James Tolbert, Deputy Chief of the DPD, testified that the Progress Note should have been in the Provience investigation file and should have been submitted to the prosecutor. (Tolbert Dep., pp. 35-36) A statement by Chris Peavey to Moore that Provience was not the shooter should also have been presented to the prosecutor, along with names of witnesses who were interviewed by the police regarding the shooting. (Tolbert Dep., pp. 69, 86) Moore's summary judgment motion as to the *Brady* violation issue must be denied.

### 3. False Arrest

In addition to the *Brady* violation issue against Moore, Provience asserts that the information provided by Moore which formed the basis of a finding of probable cause for the arrest warrant was false. The facts for both claims are the same.

In a Section 1983 claim, proof of the actual existence of probable cause is an absolute bar to a 1983 action for unlawful arrest. *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988). Where probable cause to arrest exists, no constitutional violation occurs and the Court does not even reach the issue of qualified immunity. *Id.* Probable cause to arrest has been defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person or one

of reasonable caution, in believing in the circumstances shown that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause requires merely the probability of criminal activity, and need not show a "prima facie" case of the crime. *Illinois v. Gates*, 462 U.S. 213 (1983). Whether probable cause exists is determined by the totality of the circumstances. *Id.* at 238. A valid arrest based upon a then-existing probable cause is not vitiated if the suspect is later acquitted or the charges are dismissed. *Criss*, 867 F.2d at 262; *Arnott v. Mataya*, 995 F.2d 121 (8th Cir. 1993). An officer "is under no obligation to give any credence to a suspect's story, nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss*, 867 F.2d at 263. "The Constitution does not guarantee that only the guilty will be arrested. If it did, Section 1983 would provide a cause of action for every defendant acquitted--indeed, for every suspect released." *Id.*

In this case, Provience has presented sufficient evidence to create a genuine issue of material fact as to whether the information provided by Moore which formed the basis of the arrest warrant was false. Detective Bruce testified that he knew Wiley was lying when Wiley identified Provience as the shooter since there was no connection between Provience and Hunter. (Bruce Dep., p. 50) Bruce further testified that Moore also believed that Wiley's statements were not true. (Bruce Dep., pp. 51-52) Moore admitted that there was no evidence to support Wiley's testimony that Wiley sold drugs for Provience. (Moore Dep., p. 223)

    **4. Malicious Prosecution**

The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which is entirely distinct from that of a false arrest claim,

since a malicious prosecution claim remedies detention accompanied by wrongful institution of legal process. *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010). Four elements must be shown to succeed on a malicious prosecution claim based on the Fourth Amendment. First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. *Id.* Second, a plaintiff must show that there was a lack of probable cause for the criminal prosecution. *Id.* Third, the plaintiff must show that as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, apart from the initial seizure. *Id.* at 308-09. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Id.*

As to the first prong, Provience has at the very least, created a genuine issue of material fact that Moore, as the Officer-In-Charge of the investigation team, participated or influenced in the decision to prosecute Provience. Regarding the second prong, probable cause, for the same reasons set forth above, Provience has submitted sufficient evidence to create an issue of fact. Provience has met the third prong in that he was convicted and in prison for many years. Provience has also met the fourth prong because the charges were dismissed against him. Provience's malicious prosecution claim survives summary judgment. Moore is not entitled to summary judgment on the malicious prosecution claim.

    **D.**    **State Law Claims**

        **1.**    **Governmental Immunity**

Moore claims he is entitled to governmental immunity on the state law claims since he was acting in his capacity as a police officer. Provience responds that there are genuine issues of material fact as to whether his actions were reckless. M.C.L. 691.1407(2) which provides in part

as follows:

> Except as otherwise provided in this section and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the officer employee or member while in the course of employment or service ... on behalf of a governmental agency if all of the following are met:
>
> a. The officer ... reasonably believes he or she is acting within the scope of his or her authority;
> b. The governmental agency is engaged in ... a governmental function;
> c. The officer's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

M.C.L. 691.1407(2).

For the same reasons set forth above in the qualified immunity analysis, there is a genuine issue of material fact whether Moore's actions amount to demonstrate a substantial lack of concern as to the information he provided or failed to provide regarding the arrest warrant for and prosecution of Provience.

### 2. Malicious Prosecution

In Michigan, a claim for malicious prosecution requires: 1) prior proceedings terminating in favor of the plaintiff; 2) absence of probable cause; 3) malice, defined as purpose other than that of securing a proper adjudication of the claim; and 4) a special injury that flows directly from the prior proceeding. *Payton v. Detroit,* 211 Mich. App. 375 (1995). Malice may be inferred from lack of probable cause. *Renda v. International Union, UAW,* 366 Mich. 58, 97-100 (1962).

Provience has met the first factor since the charges were dismissed against him by the Wayne

County Prosecutor's Office. For the same reasons set forth above, there is a genuine issue of material fact as to the absence of probable cause. Provience has met the second and third factors. Provience has met the fourth factor as to injury since he was convicted and imprisoned for at least nine years. Moore's summary judgment motion is denied as to Provience's state law claim of malicious prosecution.

### 3. State Law Claim of Gross Negligence

Provience voluntarily withdrew his claim for gross negligence in Count III of his Complaint.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment (**Doc. No. 71, filed 7/22/2011**) is DENIED.

IT IS FURTHER ORDERED that Count III, Gross Negligence, is DISMISSED. All other counts remain against Defendants City of Detroit and David Moore.

IT IS FURTHER ORDERED that responses to the Motions in Limine must be filed by April 20, 2012 and replies by April 30, 2012.

IT IS FURTHER ORDERED that a Hearing and Status Conference is set for **May 14, 2012, 3:00 p.m.** Final Pretrial and Trial Dates will be issued.

                                                S/Denise Page Hood
                                                Denise Page Hood
                                                United States District Judge

Dated: March 31, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2012, by electronic and/or ordinary mail.

                                                S/LaShawn R. Saulsberry

Case Manager